MILLER v. CHICAGO & A. R. CO.

CHICAGO & A. R. CO. v. MILLER.

(Circuit Court of Appeals, Second Circuit. January 15, 1912.)

No. 44.

1. RAILROADS (§ 142*)—CONSOLIDATION—RIGHTS OF STOCKHOLDERS.

That a railroad stockholder exchanged part of his holdings under a consolidation did not of itself bind him to exchange the remainder.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 444–447; Dec. Dig. § 142.*]

2. CORPORATIONS (§ 583*)—CONSOLIDATION—APPROVAL.

It is only where a corporate consolidation agreement requires an exchange of shares that approval of the consolidation by a stockholder implies an agreement to exchange.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2338–2340; Dec. Dig. § 583.*]

3. RAILROADS (§ 142*)—CONSOLIDATION—RIGHTS OF STOCKHOLDERS.

A railroad consolidation agreement, which provided that holders of unexchanged stock should continue to share in the earnings and assets of his company, did not require a holder to exchange his stock.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 444–447; Dec. Dig. § 142.*

Rights and liabilities of stockholders of railroads on consolidation, see note to Bonner v. Terre Haute & I. R. Co., 81 C. C. A. 480.]

4. RAILROADS (§ 142*)—CONSOLIDATION—AGREEMENT—VALIDITY.

Provision in a railroad consolidation agreement that holders of unexchanged stock should continue to share in the earnings and assets of their old company was not severable from the agreement; the whole agreement being invalid, if that provision is.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 444–447; Dec. Dig. § 142.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Bill by William Starr Miller against the Chicago & Alton Railroad Company. From a decree (176 Fed. 379) sustaining a demurrer to its cross-bill, defendant appeals. Affirmed.

Appeal from a decree sustaining a demurrer to, and dismissing, an amended cross-bill of complaint in a suit in equity.[1]

The amended cross-bill alleges, in substance, that in 1906 two Illinois railroad corporations were consolidated under the laws of that state; that the defendant is the consolidated corporation so created; that such consolidation was effected by an agreement which provided for the issue of the stock of the consolidated corporation upon different bases in exchange for the shares of the consolidating companies; that the complainant owned and still owns 500 shares in one of the consolidating companies and by certain acts of acquiescence and ratification—which are referred to in the opinion—"consented, agreed and became in duty bound" to exchange his shares for the consolidated stock, and that although often requested he has refused to make such exchange. The relief prayed for is that the complainant be decreed to exchange his stock.

The consolidation agreement in question is attached to the cross-bill and contains the following provision:

[1] In the following statement and opinion the cross-complainant will be, for convenience, designated as the defendant and the cross-defendant as the complainant.

"Article IV. Until all of the 73 shares of preferred stock and 4,387 shares of common stock of the party of the first part, not now owned by the party of the second part, shall have been exchanged for prior lien stock of the consolidated company as hereby provided, every holder of any such unexchanged share of such preferred stock or of such common stock of the party of the first part shall continue to have the right to share proportionately, in accordance with the existing respective rights of said two classes of stock, in the earnings and assets of the party of the first part hereby consolidated and merged into the party of the second part, as if the said consolidation and merger had not taken place and the entire capital stock of the party of the first part, now consisting of 34,795 shares of preferred stock and 187,511 shares of common stock, were still outstanding."

Article V of the agreement after providing that certain shares in one of the consolidating companies held by a trust company should not be exchanged, goes on to state:

"Until all of the 73 shares of preferred stock and 4,387 of common stock of the party of the first part not now owned by the party of the second part and held by said trustee shall have been exchanged for prior lien stock of the consolidated company as herein provided, every holder of any such unexchanged shares of such preferred stock or of such common stock of the party of the first part shall continue to have the right to share proportionately in accordance with the existing respective rights of said two classes of stock in the earnings and assets of the party of the first part hereby consolidated and merged into the party of the second part, pari passu with the Farmers' Loan & Trust Company or its successor, as trustee for the holders of said $22,000,000 bonds of the party of the second part, as if the said trustee held uncanceled and unimpaired for the benefit of such bondholders all the shares of stock of the first party now held by it as such trustee."

The shares of stock which the defendant seeks in this case to compel the complainant to exchange constituted a part of the shares referred to in the foregoing articles.

The only grounds of the demurrer to the cross-bill which will require consideration are those averring that the facts alleged do not constitute a cause of action or entitle the defendant to the relief prayed for.

Joline, Larkin & Rathbone (Arthur H. Van Brunt, Joseph P. Cotton, Jr., and Albert Stickney, of counsel), for appellant.

Philbin, Beekman, Menken & Griscom (Charles K. Beekman and Stephen P. Anderton, of counsel), for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). [1] If we should lay stress upon particular averments in the cross-bill, standing alone, we might be lead to the conclusion that it is averred as a fact that the complainant agreed expressly to exchange his shares for those of the consolidated company. But we are satisfied from the cross-bill as a whole, as well as from the contentions of counsel, that there is no claim of express agreement, and that the averments of consent and approval should be treated as conclusions drawn by the pleader from the facts alleged.

Now, we find nothing in the alleged acts of the complainant prior to the consolidation showing that he approved it. The matters charged—the subscription to mortgage bonds some six years before, the acceptance of the 30 per cent. dividend, and the approval of the lease—are all consistent with a purpose not to participate in the consolidation. A fortiori they fail to show that the complainant indi-

cated any intention to exchange his shares should a consolidation be effected. So, while the fact that the complainant did exchange a part of his holdings might justify the inference that he approved the consolidation, it would furnish no basis for the further inference that he became bound to exchange his remaining shares, unless such obligation necessarily resulted from the fact of consolidation. There being, then, nothing by way of express agreement or estoppel to bind the complainant to exchange, his duty to exchange—if it exist at all—must be based upon the consolidation proceedings.

[2, 3] Where a consolidation agreement requires an exchange of shares, proof of the approval of the consolidation shows an agreement to exchange. But where a stockholder is not required to exchange, proof of the approval of the consolidation establishes only one step, and that not the essential one. Thus, if we assume that the defendant is right in its contention that the complainant, by virtue of his ownership of stock in one of the consolidating companies became bound to follow his corporation into the consolidation, it does not follow that he agreed to exchange his shares, if the articles of consolidation recognized his right to retain them. And we think that they did recognize and give him this right. In our opinion, the object and effect of the provisions already quoted were to permit stockholders who were unwilling to surrender their shares to the consolidated corporation, to retain them under the conditions and with the rights stipulated. We find no obligation to exchange.

It is urged, however, that the provisions in question were temporary in their nature and were intended to cover only the time during which the details of the consolidation could be worked out. In our opinion, however, the language used furnishes no basis for this contention. On the contrary, we think the provision giving the right to share "in the earnings and *assets*" of the old corporation inconsistent with such interpretation. It is further contended that there are embarrassments and difficulties in the way of giving effect to these provisions as we have construed them. But the difficulty of performing a contract is no reason for failing to enforce it or for interpreting it contrary to its plain meaning.

[4] The contention is also made that the provisions in question which require the continued existence of one of the old corporations are invalid because they are inconsistent with the rule that the effect of consolidation is to terminate the existence of corporations consolidating. If it were necessary for us to examine this question we should find, probably, that there are exceptions to this rule. But it is not necessary for us to examine it. The agreement of consolidation is not severable. The provisions with respect to nonexchanging stockholders are material and essential parts of it. It cannot be said that it would have been made if they had not been included. Indeed under the conditions disclosed it is not even certain that the controlling interests would have ventured to present it for consideration without them. If these provisions are invalid, the whole consolidation agreement is invalid and the defendant, consequently, states no cause of action in its cross-bill. And, on the other hand, if the provisions are

valid, the complainant has the right to stand upon them and the defendant is not entitled to the relief prayed for.

The demurrer to the cross-bill was properly sustained by the Circuit Court and its decree is affirmed, with costs.